## BERMINGHAM v. FORSYTHE.

1. Can this court consider facts agreed upon by counsel, which were not presented to the court below?

2. Within six years before action brought a debtor made written acknowledgment of his indebtedness for wages due to the creditor for several years preceding. *Held,* that the claim was not barred by the statute of limitations.

3. Where the master and Circuit Judge concur as to the facts of a case, and there is abundant testimony to support their findings, this court will rarely interfere, if ever.

4. After a legatee, who is beyond seas, had recovered his legacy in full, and the executor had reserved only enough assets to pay two other pecuniary legatees, a creditor brought action against the executor and these three legatees to recover her debt. *Held,* that she was entitled to be paid out of the fund in the executor's hands, and the unpaid legatees must themselves enforce a *pro rata* contribution from the satisfied legatee, who was beyond the jurisdiction of the court.

5. Such legatee having accepted a note for $5,000 from a debtor to the estate, in full satisfaction of his legacy for that amount, but which note he was unable to collect in full, he is liable to contribute to the unpaid legatees upon the basis of $5,000 received, and not upon the basis of only the smaller sum realized.

Before WITHERSPOON, J., Charleston, July, 1886.

This was an action by M. E. Bermingham against the executor and legatees and devisees of W. C. Forsythe, deceased. The claim was for wages due plaintiff by deceased down to June 1, 1883, and running back prior to 1876. The claim was proved, *inter alia,* by a memorandum book covering entries for these

several years, with interest on annual balances, and a balance struck on June 1, 1883, of $1,999.04, which includes an item of $122.67, interest on the amounts entered above it. Whether any or all of these entries were in the handwriting of testator, the witnesses were not agreed.. Other matters are stated in the opinion.

*Messrs. Melton & Wingate,* for appellants.

*Mr. T. G. Barker,* for plaintiff.

*Messrs. Smythe & Lee,* for the other respondents.

March 19, 1887. The opinion of the court was delivered by MR. JUSTICE MCIVER. On or about July 6, 1883, W. C. Forsythe, late of the city of Charleston, South Carolina, departed this life, leaving a will, of which the defendant, Augustine T. Smythe, duly qualified as executor on August 8, 1883. By his will the testator gave to his wife, Rosetta S. Forsythe, all of his real estate for life, with remainder to his daughter, Matilda, now the wife of the defendant, James Cosgrove, jr., and he also gave to his said wife alsolutely all his household furniture, silver-ware, &c. To his son, Samuel W. Forsythe, he gave his mercantile business, including his stock in trade, bills, books, and notes connected therewith. To his son, James Adger Forsythe, a resident and citizen of the State of North Carolina, he gave a pecuniary legacy of five thousand dollars, and to his brother, Alexander W. Forsythe, and his sister, Ellen Jane Forsythe, both of whom reside in Ireland, he gave pecuniary legacies of one thousand dollars each.

Soon after the will was made the testator took his son, Samuel W., into partnership with him, and the mercantile business was thereafter carried on under the name of W. C. Forsythe & Son. At the time of his death the testator appears to have had on deposit, to his individual credit, on the books of the firm of W. C. Forsythe & Son the sum of seven thousand dollars, and this seems to have been the only fund available for the payment of the pecuniary legacies, all the other personal assets, except the

stock of goods, &c., given to Samuel, and the household furni-
ture, &c., given to the widow, having been exhausted in the pay-
ment of the debts of the testator. Samuel W. Forsythe finding
it very inconvenient to take so large a sum of money out of his
business, which he continued to carry on after the death of his
father, as would be necessary to pay the pecuniary legacies, the
deposit to the credit of the testator being precisely equal to the
aggregate amount of such legacies, negotiations were commenced
for the purpose of inducing these legatees to accept the notes of
Samuel in satisfaction of their legacies, thereby securing time to
Samuel to pay them. This negotiation, so far as James Adger
Forsythe was concerned, proved successful, and accordingly, on
June 16, 1884, the said James Adger Forsythe executed his
release under seal to the executor, acknowledging satisfaction of the
amount of his legacy, five thousand dollars, and received from
the said Samuel W. Forsythe his individual note for that amount,
though no money passed. Thereupon the executor charged him-
self, on June 19, 1884, in his return made to the judge of pro-
bate, with that sum of money, and on the same day credited
himself with the like amount as paid to J. Adger Forsythe in
full of his legacy; and in that return the usual commissions for
receiving and disbursing that sum of money were charged and
have been allowed.

The negotiations with the legatees residing in Ireland having
proved unsuccessful, the executor demanded of Samuel W. For-
sythe the payment of the sum of two thousand dollars, necessary
to satisfy these legacies, together with the interest on the same,
and the amount was accordingly paid to the executor on Feb-
ruary 14, 1885, who thereupon promptly informed the Irish lega-
tees that the money was in his hands ready to be paid over to
them upon the execution of proper receipts and discharges. The
executor receiving no reply to these communications, again wrote
said legatees on April 3, 1885, to the similar effect. On April
10, 1885, the executor was formally notified of the claim of
the plaintiff in this action against the estate of his testator,
which she had neglected to present within the time prescribed by
law under the advertisement to creditors which had been duly
published by the executor. Thereupon the executor promptly

informed the legatees in Ireland, by letter, of the fact that this claim had been presented, of which he had previously been ignorant, and stated that, under the circumstances, he would not feel justified in paying their legacies without an order of the court. On April 18, 1885, one Samuel Thomson, in behalf of the legatees in Ireland, called on the executor, desiring to know "what receipts were necessary to enable him to collect the money for them," when he also was informed of the change in the situation of affairs by the presentation of the claim of the plaintiff, and that the money could not be paid, except under an order of the court. On April 23, 1885, this action was commenced by the plaintiff to recover the amount alleged to be due her by the testator for services rendered to him during his life-time, and all of his devisees and legatees, as well as the executor, are made parties, defendants.

Subsequent to the commencement of this action, it seems that Samuel W. Forsythe, not being very successful in the management of the mercantile business, was induced to secure to his brother, J. Adger Forsythe, the amount which he had become responsible to him for on account of his legacy. Accordingly on May 6, 1885, Samuel W. Forsythe executed a new note to J. Adger Forsythe, in lieu of the one given in June, 1884, in satisfaction of his legacy, and secured the same by a mortgage on his stock of goods. It is alleged, and the fact is so found by the master, that at the time this mortgage was executed it was the understanding of the parties that it should operate as a security to indemnify Mrs. Rosetta S. Forsythe against certain liabilities which she had assumed for one McComb, though this understanding was not incorporated in the mortgage. In pursuance of this agreement, when the mortgage was foreclosed and the stock of goods sold under it in June, 1885, for the gross sum of four thousand dollars, the sum of two thousand dollars was applied to the relief of Mrs. Rosetta S. Forsythe from her liability above mentioned, and after the payment of sundry expenses, only fourteen hundred dollars remained for J. Adger Forsythe, which is the total amount of cash actually received by him on account of his legacy.

One of the facts found by the master upon the undisputed evidence adduced in the cause, was that J. Adger Forsythe "has

no property of his own and nothing upon which any judgment could attach." But since the argument here a paper signed by all the counsel in the cause has been filed in this court, of which the following is a copy : "After the trial of this case it has been ascertained that James Adger Forsythe has an interest in property in South Carolina, under a deed of trust which provides that such property, consisting of a house and lot in Green street, in the city of Charleston, shall be held for the benefit of his mother, Rosetta S. Forsythe, during life, 'and from and immediately after her death, then, upon the further trust, to assign, set over, and transfer the said above mentioned premises, the corpus of this trust, unto her children living at the time of her death, to be equally divided between them, share and share alike, the issue of any deceased child taking, by representation, the parent's share, free and discharged from any further trust whatsoever; and in default of such issue living at the time of her death, then immediately thereafter to such person or persons as she may, by her last will and testament (which she is hereby empowered to make), appoint and designate.' It is agreed that the foregoing statement be submitted to the Supreme Court."

It appears that the executor has fully accounted, and the balance found to be in his hands, amounting to about two thousand dollars, has been, under an order in this cause, deposited in bank to the credit of this case, subject to the order of the court herein.

The master, to whom it was referred to hear and determine the issues in this case, made his report, finding that the plaintiff had established her claim to the amount of $1,999.04, with interest from June 1, 1883 ; that she was entitled to payment out of the fund now under the control of the court ; and that the legatees, Alexander W. Forsythe and Ellen Jane Forsythe were entitled to a decree against J. Adger Forsythe for contribution in the proportion which $1,400 bears to $2,000, the amount actually received in cash by J. Adger Forsythe being only $1,400. This report, with the exceptions thereto, was heard by Judge Witherspoon, who, in a short order, overruled the exceptions and confirmed the report, making it the judgment of the court.

From this judgment the defendants, Alexander W. Forsythe

and Ellen Jane Forsythe, appeal upon the several grounds set
out in the record, which need not be repeated here, for they sub-
stantially raise only the following questions: 1st. Whether the
claim of the plaintiff has been satisfactorily established. 2d.
Whether the plaintiff is entitled to have the whole amount of the
fund now in the hands of the court applied to the payment of
her claim (the whole amount appearing to be necessary for the
purpose), or whether she should not be remitted to her judgment
against the other legatee, J. Adger Forsythe, for his *pro rata*
portion of the claim. 3d. Whether, in the event that it shall be
held that the plaintiff is not required to pursue J. Adger For-
sythe for his *pro rata* portion of the claim, but is entitled, in the
first instance, to payment out of the fund in court, these appel-
lants are not entitled to a decree against J. Adger Forsythe for
contribution in the proportion of $2,000 to $5,000, instead of in
the proportion of $1,400 to $2,000.

Before entering upon the consideration of these questions it is,
perhaps, proper first to determine what weight, if any, shall be
given to the additional fact presented since the argument here in
the agreement filed by the counsel, a copy of which is set out
above. Whether an appellate tribunal, whose jurisdiction is
limited to a review of what occurred in the court below, is at
liberty to consider any fact, even though admitted by counsel,
which was not presented to that court, may admit of grave question.
This court has no *original* jurisdiction, except in certain cases,
of which this is certainly not one; and if we were to undertake
to decide a case upon facts not presented to the tribunal whose
judgment we are called upon to review, we might be regarded as
usurping a jurisdiction not conferred upon us by the constitution.
This seems to us very much like a case of after-discovered testi-
mony, in which it has been held that this court has no jurisdic-
tion, the extent to which we have gone being to suspend the
appeal, upon a proper application and a proper showing for that
purpose, to enable a party to move the Circuit Court—the proper
tribunal to which such a motion should be addressed—for a new
trial upon the ground of after-discovered testimony. But in this
case no such application, and no such showing, has been made.
Inasmuch, however, as the question has not been argued, and

there may possibly be some doubt as to the proper course to be pursued, we do not propose now to make any definite ruling on the subject, because, under the view which we take of the case, and of the additional fact presented, we do not regard it as material, as will appear when we come to consider the questions raised by the grounds of appeal.

Proceeding, then, to those questions, it seems to us that the first raises only an issue of fact. For although the statute of limitations was pleaded in the answer of the appellants, yet it is not mentioned either in the exceptions to the master's report or in the grounds of appeal, and is not pressed in the argument. We presume, therefore, that the plea of the statute was abandoned as untenable; but whether abandoned or not, we think it quite clear that it could not be sustained under the facts established in the case. Regarding the first question, then, as one of fact, under the well settled rule which has been so often applied that we need only make a passing allusion to it, we think it manifest that there is no ground upon which we can disturb the finding of the master concurred in by the Circuit Judge. There certainly was testimony which, if believed, would be abundantly sufficient to sustain the plaintiff's claim, and when that is the case, this court would rarely, if ever, interfere with the finding below.

As to the second question, there can be no doubt that a creditor may, when necessary to secure satisfaction of his claim, pursue a legacy even after it has been actually paid over to the legatee. We do not, therefore, think it material to inquire whether the executor had assented to the legacies to these appellants, or as to the effect of his recall of such assent, after he was informed of the plaintiff's claim, and before the money was actually paid over. Here is the fund in the hands and under the control of the court, and it is needless to inquire who may have the strict legal title to it; for if it is to be regarded as still rightfully in the hands of the executor, then unquestionably it is applicable to the payment of the plaintiff's debt; and if, on the other hand, the legatees should be regarded as having acquired the legal title to it by the assent of the executor to their legacies, it may still, either in whole or in part, be made applicable to the payment of the debt.

The real point is, whether the plaintiff shall not be required, in the first instance, to seek satisfaction from the other legatee, J. Adger Forsythe, of his *pro rata* of the debt before she can claim satisfaction in full from the fund to which the appellants would be entitled in the absence of any debts. The general rule undoubtedly is that where there are several legatees who are liable to contribute for the payment of a debt, they must be all brought before the court, and judgment goes against each for his *pro rata* portion. But to this rule there are well established exceptions. Where a legatee is insolvent, or beyond the jurisdiction of the court, as in this case, he need not be brought in, for a judgment against him would be either fruitless, or attended with such expense and delay in its enforcement as might, practically, defeat the claim ; and as the rights of a creditor are superior to those of a legatee, the Court of Equity, if necessary to secure the rights of the creditor, may require the payment of the whole debt, at least to the extent of his legacy, from a single legatee, leaving him to seek contribution from the other legatees, instead of forcing the creditor, notwithstanding his acknowledged superior right, to encounter the expense and delay of what, after all, might prove to be a vain and fruitless pursuit of such other legatees. For, after all, if the creditor should undertake to pursue the other legatees and fail in realizing his debt, he would still have the right to come back upon the single legatee for the amount which he had been unable to obtain from the others.

Recognizing this superior right of the creditor, and that no legatee is entitled to receive any portion of his legacy to the detriment of a creditor, the Court of Equity will not remit a creditor to an uncertain and, perhaps, vain pursuit of other legatees, when it has in its hands and under its control a fund from which the debt can be promptly realized, but will require the legatee, who would otherwise be entitled to the fund, to seek contribution from his co-legatee. These views, we think, are fully supported by the authorities cited by counsel, especially the cases of *Fripp* v. *Talbird*, 1 *Hill Ch.*, 142 ; *McMullin* v. *Brown*, 2 *Id.*, 457 ; and *Singleton* v. *Moore*, *Rice Ch.*, 110. We do not think, therefore, that there was any error in adjudging that the plaintiff was entitled to payment of her claim out of

the fund in the hands of the court, and that the appellants were entitled to a decree for contribution against their co-legatee, J. Adger Forsythe.

The only remaining inquiry is as to the proportion of such contribution. We have seen the amount of the legacy which J. Adger Forsythe was entitled to receive under the terms of the will, and being *sui juris* there is no doubt that he could accept in satisfaction of the amount due him, either the note of the executor or the note of any other person, or any other species of property ; and if he did so, it would as effectually extinguish his claim as legatee against the estate of the testator as if he had received satisfaction in gold or silver dollars. True, he might have demanded that the amount of his legacy should be paid to him by the executor in actual cash, but he was not compelled to do so ; and when he voluntarily received the note of his brother Samuel *in satisfaction of his legacy*, and acknowledged the same in writing by his release under seal to the executor, whereby the executor was authorized to charge, and did charge, the same as actual cash in his accounts as such executor, upon which he has been allowed the usual commissions upon money received and paid out, we think the transaction must be regarded as a payment in full of the legacy. The fact that by reason of the vicissitudes of trade, or from other causes, the thing received as money has, in the course of time, turned out to be of much less value than it was supposed to be at the time it was taken, cannot affect the legal aspect of the transaction. Its character was fixed on June 16, 1884, when J. Adger Forsythe accepted the note of his brother as cash in full payment of his legacy, and acknowledged the same by his release under seal, and what has subsequently occurred cannot be allowed to alter its legal character.

Suppose that J. Adger Forsythe, instead of accepting the note of his brother in satisfaction of his legacy, had received from him a conveyance of a lot on which there was a fine building, the value of which was fairly estimated at five thousand dollars, and the building should be destroyed within twelve months after the transaction was consummated, whereby the value of the property became seriously impaired, surely the loss would fall entirely upon J. Adger Forsythe, and he would have no right to

call upon others to share in his misfortune by denying that he received payment in full of his legacy. We do not see the difference, in principle, between the case supposed and the one presented by the facts of the case now before us. It seems to us that the legal character of the transaction on June 16, 1884, was practically the same as if the executor had exacted payment of the sum of five thousand dollars from Samuel W. Forsythe, and paid over the same to J. Adger Forsythe in satisfaction of his legacy, who immediately reloaned that amount to his brother Samuel taking his note for the same, in which case there could not be a shadow of doubt that J. Adger Forsythe would be regarded as having received full payment of his legacy.

Now, if it had been made to appear, and the master had so found as a fact, that at the time when these legacies became payable, the assets applicable for that purpose were insufficient to pay the same, then, perhaps, the legatee, J. Adger Forsythe, would not be held accountable for more than what he actually received, or what he might, by the exercise of due diligence, have realized, even though he may have previously accepted the note for the full amount under the belief that the assets would prove sufficient to pay all the legacies in full. But there is no such finding by the master, and the testimony does not warrant such a conclusion. On the contrary, the inventory and appraisement showed that the assets were sufficient, and such appears to have been the belief of both the executor and Samuel W. Forsythe, judging from their representations to the appellants, when they were endeavoring to induce the appellants to accept the notes of Samuel W. Forsythe in satisfaction of their legacies. It is true that the executor was not then aware of the existence of the plaintiff's claim, and may not have known of the purpose of the two brothers to divert a portion of the assets to the relief of their mother, but Samuel was aware of all this. It may be, therefore, that the deficiency in the assets, which has led to this controversy, may have been due entirely to the kindly, but what has proved to be injudicious, indulgence extended to Samuel W. Forsythe by J. Adger Forsythe, and their commendable desire to relieve their mother from a liability which was pressing upon her. If so, however much we may be disposed to sympathize with such an exhi-

bition of fraternal and filial regard, we cannot allow it to affect the legal rights of the appellants, who are before the court demanding such rights.

The executor, understanding his duties as such fully, was proceeding properly and promptly to the settlement of the estate according to the terms of the will, and while unwilling to throw any obstacles in the way of any family arrangements the parties might be disposed to make for the relief of one of them, and, on the contrary, showing every disposition to facilitate such arrangements as far as he could safely and properly do so, is certainly not in default. He stood ready to enforce the payment of the amount necessary to satisfy the legacies, and was only deterred from doing so by the voluntary acceptance by J. Adger Forsythe of his brother's note in lieu of the money, when he very properly demanded and received from him the proper evidence of satisfaction in full. And when the appellants demanded their money, declining the proposition made to them in behalf of Samuel, he at once collected the money and promptly notified the appellants. And, as the event has proved, it would probably have been much better for all parties concerned if the executor had been allowed to proceed in the usual way to the settlement of the estate, without any attempt on the part of Samuel W. Forsythe to obtain further time for the payment of the amount due by him, by the arrangement made with his brother.

Under this view of the case, we do not deem it necessary to consider the question raised in the argument of counsel for appellants, whether it was competent to show by parol evidence that the mortgage given by Samuel W. Forsythe to J. Adger Forsythe, though not so appearing on its face, was really intended to secure Mrs. Rosetta S. Forsythe as well as J. Adger Forsythe. For, even granting that such was the understanding of the parties at the time the mortgage was executed, we do not see how it could affect the question which we are called upon to determine. The fundamental inquiry is, whether J. Adger Forsythe is to be regarded as having received payment in full of his legacy; and as we have said that must be determined by what occurred on June 16, 1884, when he accepted the note in payment of his legacy, and acknowledged satisfaction in full by his release under seal.

If he then accepted the note as payment, which the testimony conclusively shows that he did, it operated then as payment, and what subsequently occurred cannot change the character of the transaction. The mortgage was not given until nearly twelve months afterwards, to wit, on May 6, 1885, and cannot have the effect of changing the character of the previous transaction.

But in addition to this, even assuming that the agreement was made as claimed, and that it had the same force and effect as if it had been formally incorporated in the mortgage, we do not see how it could benefit J. Adger Forsythe. The liability which that agreement was designed to secure through the mortgage was a liability of Mrs. Rosetta S. Forsythe, with which, so far as the evidence discloses, neither J. Adger Forsythe nor Samuel W. Forsythe had any legal concern. It was, therefore, an arrangement by which these two brothers voluntarily allowed a large portion of the assets (as it happens, exactly the amount of the two legacies to appellants—two thousand dollars) to be diverted from the payment of a debt, for which such assets were liable, to the payment of the debt of a third person for which neither of them were responsible. It was practically a gift to Mrs. R. S. Forsythe of that much money, which was properly applicable to the note of J. Adger Forsythe.

But we again repeat, we do not think that the taking of the mortgage, or what was done under it, has any real bearing on the question we are called upon to determine. The real inquiry being whether J. Adger Forsythe has received payment in full of his legacy or only in part, we think it must be determined adversely to the position taken by him, upon the principle that anything is payment which is accepted as such ; and the testimony conclusively showing that on June 16, 1884, he did accept the note of his brother for five thousand dollars in full payment and satisfaction of his legacy for that amount, and acknowledged the same by his writing under seal, he must be regarded as having received the full amount of his legacy, and therefore liable to contribution upon that basis.

The judgment of this court is, that the judgment of the Circuit Court be so modified as that the appellants shall be entitled to a decree for contribution against their co-defendant, J. Adger

Forsythe, in the proportion which $2,000 bears to $5,000, instead of in the proportion which $1,400 bears to $2,000, and that in all other respects the judgment of the Circuit Court be affirmed.